# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BABINSKI, | Case No. 1:17-cv-00694-DAD-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| M.E. SPEARMAN, | |
| Respondent. | |

Petitioner Brian Babinski is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts a violation of the Fourth Amendment's prohibition on unreasonable searches. For the reasons discussed herein, the Court recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On December 16, 2014, Petitioner pled no contest in the Fresno County Superior Court to one count of possession of child pornography. (2 CT[1] 381–84; 6 RT[2] 921). Petitioner admitted that he had prior convictions within the meaning of the three strikes law. (2 CT 382; 6 RT 922–24). Petitioner was sentenced to an imprisonment term of twenty-five years to life. (2 CT 385).

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on July 18, 2017. (ECF No. 12).
[2] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on July 18, 2017. (ECF No. 12).

1

On January 31, 2017, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Babinski, No. F070916, 2017 WL 412733, at *2 (Cal. Ct. App. Jan. 31, 2017). The California Supreme Court denied Petitioner's petition for review on April 26, 2017. (LDs[3] 16, 17).

On May 19, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition, and Petitioner has filed a traverse. (ECF Nos. 11, 16).

## II.

## STATEMENT OF FACTS[4]

*Procedural and Factual Background*
On February 9, 2011, while confined at Coalinga State Hospital awaiting adjudication of a petition to have him committed as a sexually violent predator (Welf. & Inst. Code, § 6600 et. seq.), Babinski walked through a metal detector causing it to alert. During a subsequent search of a folder he was carrying, a police officer found two memory cards that were seized and examined without a warrant and one was found to contain child pornography. On June 15, 2011, when he was arrested pursuant to a warrant that was issued based on the pornography found on the memory cards, other memory cards containing child pornography were found in a sock that was sewn into his boxers.

On September 1, 2011, the Fresno County District Attorney filed a first amended complaint charging Babinski with two counts of possession of child pornography with a prior conviction and with having two prior convictions within the meaning of the Three Strikes law.

On April 26, 2012, prior to the preliminary hearing in this matter, Babinski filed a motion to suppress (§ 1538.5). In his motion, Babinski alleged that the seizure and search of the memory cards were unlawful because they occurred without a warrant, and that all materials subsequently seized from Babinski were the "fruits of the illegal search."

On May 8, 2012, the prosecutor filed a reply to the motion arguing the first memory cards were lawfully seized because: (1) at the time, Babinski was housed at the hospital pursuant to a civil commitment under Welfare and Institutions Code section 6600 and had a reduced expectation of privacy; and (2) Babinski disclaimed ownership in the memory cards.

On August 9, 2012, the motion was heard at the preliminary hearing.

On August 15, 2012, the magistrate issued an order granting Babinski's suppression motion as to both seizures of memory cards. As to the initial seizure,

---
[3] "LD" refers to documents lodged by Respondent on July 18, 2017. (ECF No. 12).
[4] The Court relies on the California Court of Appeal's January 31, 2017 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

the court found that if the effectiveness of therapeutic treatment was the driving force behind the hospital's search policy that resulted in the seizure of the cards, the hospital had other reasonable options it could pursue that did not infringe on the Fourth Amendment rights of its patients. It also found that Babinski did not abandon the memory cards. The magistrate granted the motion as to the second seizure because the arrest warrant that resulted in that seizure was based on the illegal seizure of the first memory cards. Based on the absence of admissible evidence, the court also dismissed the underlying complaint.

On August 30, 2012, the prosecutor filed a motion for reinstatement of the complaint (§ 871.5), arguing that the search was lawful because, as a person who was housed at a state hospital pending a civil commitment as a sexually violent predator, Babinski had a lesser expectation of privacy than a private citizen. He also argued that the magistrate erred in granting the suppression motion because Babinski disclaimed ownership of the memory cards.

On October 19, 2012, the court granted the prosecutor's motion and reinstated the first amended complaint.

On December 7, 2012, Babinski was held to answer on the complaint.

On December 10, 2012, the prosecutor issued an information that reiterated the charges and allegations contained in the amended complaint.

On February 6, 2013, Babinski filed a motion to dismiss the information (§ 995), which the court denied on March 15, 2013.

On December 16, 2014, Babinski pled no contest to one count of possession of child pornography with a prior and admitted the three strikes allegation in exchange for the dismissal of the remaining count and a stipulated sentence of 25 years to life.

On January 23, 2015, the court sentenced Babinski to an indeterminate term of 25 years to life.

***The Preliminary Hearing***
For purposes of the motion and the hearing, the parties stipulated to the following: (1) the SD memory card seized on February 9, 2011, contained images of child pornography in violation of section 311.11, subdivision (b); (2) on June 15, 2011, Babinski was arrested pursuant to an arrest warrant that was issued based on the child pornography from the memory cards seized from Babinski on February 9, 2011; (3) during the arrest, memory cards containing child pornography in violation of section 311.11, subdivision (b) were found hidden in a sock sewn into Babinski's boxer shorts; (4) Babinski had two prior convictions for violating section 288, subdivision (a) as alleged in the complaint and a 1987 conviction for violating section 311.3, subdivision (a); and (5) a probable cause hearing had been held and Babinski was pending adjudication of a petition charging him with being a sexually violent predator (Welf. & Inst. Code, § 6600 et seq.).

During the hearing, Officer Guadalupe Sandoval from the Department of Police Services at Coalinga State Hospital testified that on February 9, 2011, he was monitoring a walk-through metal detector located at the entrance to a vocational area of the hospital. A small table where items could be set down for inspection was located next to the metal detector.

At approximately 2:45 p.m., Babinski placed an accordion folder on the floor next to the table before passing through the metal detector. When the metal detector alerted as Babinski walked through, he took something out of his right pants pocket that Officer Sandoval was unable to see and placed it in the folder. Babinski then walked through the metal detector a second time and this time the detector did not alert, which caused Sandoval to suspect that the item Babinski had pulled out of his pocket had caused the detector to alert.

Officer Sandoval grabbed his flashlight, looked in the folder and saw a folded white sheet of paper, three quarters of an inch by an inch in size. Babinski then walked up to the table and picked up the folder. Officer Sandoval asked Babinski what he had taken out of his pocket and Babinski responded that it was "nothing." Babinski picked up the folder and as he shuffled through something inside, Sandoval asked him what would have made the detector alert and what the white, folded piece of paper was. Babinski pulled out a ripped sheet of paper, showed it to Sandoval and told him that was what he pulled out. Sandoval told Babinski that was not what he saw when he looked in the folder. Babinski, however, insisted that was what he put in the folder.

After he and Babinski moved out of the way of other patients who were walking through, Sandoval asked Babinski to let him see the folder. Babinski appeared nervous and his hands were shaking as Officer Sandoval took all the papers out of the folder, placed them on the table, and looked in the folder. Sandoval did not find anything, so he grabbed the papers and as he flipped through them, a folded piece of paper fell on the table. Sandoval grabbed the paper and said, "This is what I had saw [*sic*] originally."

Babinski replied, "I don't know what that is. It's not mine."

Sandoval asked Babinski, "How can it not be yours if this is your folder?"

Babinski responded, "That's not mine. I don't know where it came from."

Officer Sandoval examined the folded paper and saw that on the outside it had the following writing, "Videos Boy–Girl (16) from SD 2 GB to Micro HP 8GB." Inside it contained an "SD chip" and a smaller "microchip."

Officer Sandoval again asked Babinski, "What is this?"

Babinski responded, "I don't know what it is. It's not mine."

The writing on the paper made Sandoval suspect that the memory cards might contain contraband and he immediately confiscated them and booked them into evidence. Later that day, Officer Sandoval placed the memory cards in a computer and viewed their contents. Officer Sandoval knew that Babinski was a civil commitment to the hospital because he was awaiting adjudication on a petition alleging he was a sexually violent predator or had already been adjudicated a sexually violent predator.

Sergeant Duvall testified that the hospital houses sexually violent predators, Department of Corrections inmates who have mental disorders, mentally disordered offenders, and people pending adjudication on petitions for commitment as sexually violent predators. He also testified that the hospital has a policy that staff members may initiate a search if they have a reasonable suspicion "that contraband is present."

> After Sergeant Duvall testified, the parties stipulated that child pornography was adverse to the treatment goals of patients at the hospital, including Babinski.

Babinski, 2017 WL 412733, at *1–3.

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (*en banc*). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

1 In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

6

AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIM

In his sole claim for relief, Petitioner challenges his conviction on Fourth Amendment grounds. (ECF No. 1 at 5).[5] Respondent argues that Petitioner's search and seizure claim is barred from federal habeas relief pursuant to Stone v. Powell, 428 U.S. 465 (1976). (ECF No. 11 at 6–7).

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494. See Newman v. Wengler, 790 F.3d 876, 881

---

[5] Page numbers refer to the ECF page numbers stamped at the top of the page.

(9th Cir. 2015) (holding Stone survived enactment of AEDPA). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided." Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).

In the instant case, Petitioner raised this Fourth Amendment claim in a motion to suppress. (1 CT 52–56). After a hearing on the matter, where Petitioner was allowed to examine witnesses, the magistrate granted the motion and dismissed the underlying criminal complaint. (1 CT 127–32). Subsequently, however, after reviewing the briefs and hearing arguments from the parties, the superior court granted the prosecution's motion to reinstate the criminal complaint based on Petitioner's reduced expectation of privacy and the plain view doctrine. (Aug. RT[6] 4, 19). Thereafter, Petitioner filed a motion to dismiss pursuant to California Penal Code section 955 based on the same Fourth Amendment issue. (1 CT 257–62). After reviewing the briefs and holding a hearing, the superior court denied the motion to dismiss. (1 RT 6–7, 13–14). Petitioner also filed a motion in limine to exclude, *inter alia*, the SD memory cards. (2 CT 351–65). The superior court denied the motion, finding that it raised the same arguments that had been previously litigated and denied. (6 RT 912–14). Petitioner then raised his Fourth Amendment claim on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision based on abandonment. Babinski, 2017 WL 412733, at *3–5. Finally, Petitioner raised the claim in his petition for review, which the California Supreme Court summarily denied. (LDs 16, 17).

Petitioner argues that his Fourth Amendment claim was not fully and fairly litigated because the trial court "refused to follow clearly established state and federal laws, mis[s]tated the facts in evidence, and ruled on a trier-of-fact issue beyond his jurisdiction." (ECF No. 16 at 16). As stated above, the relevant inquiry on federal habeas review is whether Petitioner had the opportunity for full and fair litigation of his claim, not whether the claim was correctly decided. See Ortiz-Sandoval, 81 F.3d at 899. Although Petitioner asserts that there was an

---

[6] "Aug. RT" refers to the Augmentation of the Reporter's Transcript on Appeal lodged by Respondent on July 18, 2017. (ECF No. 12).

8

"unconscionable breakdown in the state corrective process," Petitioner's actual contention is that the state courts' decisions were wrongly decided. Petitioner also appears to argue that the Fourth Amendment issue should have been decided by the trier of fact rather than the court. (ECF No. 16 at 17). However, whether evidence is admissible or inadmissible is an issue properly determined by the court. Petitioner further argues that the state did not provide an adequate corrective process by appointing him ineffective counsel who allegedly refused to appeal the detrimental evidentiary rulings. (ECF No. 16 at 17–18). However, Petitioner has not raised an independent ineffective assistance of counsel claim in the instant petition or in the state courts. Moreover, the Court notes that Petitioner's Fourth Amendment claim was in fact raised on appeal, so it is unclear what further action Petitioner wished counsel to take or in what way counsel's performance was deficient.

Based on the foregoing, the Court finds that the state courts provided Petitioner with a "full and fair opportunity to litigate" his Fourth Amendment claim. Stone, 428 U.S. at 494. See, e.g., Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005); Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981). Accordingly, Petitioner is not entitled to habeas relief, and the petition should be denied.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling

pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 2, 2017**  /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE